1   Keith Zakarin (SBN 126528)
    **DUANE MORRIS LLP**
2   750 B Street, Suite 2900
    San Diego, CA 92101-4681
3   Telephone:  619-744-2200
    Facsimile:  619-744-2201
4   E-mail:  kzakarin@duanemorris.com

5   Teresa N. Cavenagh (Pro Hac Vice to be filed)
    **DUANE MORRIS LLP**
6   30 South 17th Street
    Philadelphia, PA  19103-4196
7   Telephone:  215-979-1808
    Facsimile:  215-689-1939
8   E-mail:  tncavenagh@duanemorris.com

9   *Attorneys for Defendants*

10

11                  **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13                       **WESTERN DIVISION**

14

15  **UNITED STATES OF AMERICA**, *ex rel.*     Case No.  CV-13-5256-RGK(AJWx)
    **TERISA MERCER CARON**,
16  **VERONICA TREJO**, **PAIGE STEVENS**,      **DEFENDANTS' NOTICE OF**
    **HEATHER LUEDTKE**, **TAMECA**             **MOTION AND MOTION TO**
17  **SHELTON**, and **CINDY JUAREZ**,          **DISMISS RELATORS' FIRST**
    individuals,                                **AMENDED COMPLAINT**
18                                              **PURSUANT TO FEDERAL**
                       Plaintiffs,              **RULES OF CIVIL PROCEDURE**
19                                              **9(b) AND 12(b)(6);**
         v.                                     **MEMORANDUM OF POINTS**
20                                              **AND AUTHORITIES IN**
    **B&H EDUCATION, INC.**, a Delaware         **SUPPORT THEREOF**
21  Corporation, d/b/a MARINELLO SCHOOL         **[PROPOSED] ORDER FILED**
    OF BEAUTY; **B&H EDUCATION**                **CONCURRENTLY HEREWITH**
22  **HOLDINGS, L.L.C.**, a Delaware Limited
    Liability Company; **DR. R. RASHED**        Judge:    Hon. R. Gary Klausner
23  **ELYAS**, an individual; **DR. NAGUI**     Place:    Courtroom No. 850
    **ELYAS**, an individual; **MICHAEL**       Date:     August 24, 2015
24  **BENVENUTI, COO**, an individual;          Time:     9:00 a.m.
    **MICHAEL FLECKER, CFO**, an
25  individual; **ABRY PARTNERS VI, L.P.**, an
    unknown entity; **ABRY INVESTMENT**
26  **PARTNERSHIP, L.P.**, an unknown entity;
    **ABRY SENIOR EQUITY II, L.P.**, an
27  unknown entity; **UNITED BEAUTY**
    **ENTERPRISES, INC.**, a California
28  Corporation; and **SCOPE BEAUTY**

1    **ENTERPRISES, INC.**, a California
Corporation,

2

                Defendants.

3

4    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

5        **PLEASE TAKE NOTICE** that on August 24, 2015, or as soon thereafter as

6 the matter may be heard, in Courtroom No. 850, United States Courthouse, 255 East

7 Temple Street, Los Angeles, California, before the Honorable R. Gary Klausner,

8 Defendants will, and hereby do, move the Court for an order dismissing all causes of

9 action in the Plaintiffs/Relators' First Amended Complaint pursuant to Federal Rule of

10 Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted

11 and Federal Rule of Civil Procedure 9(b) for failure to plead fraud with specificity.

12        This Motion is based upon this Notice of Motion, the Memorandum of Points

13 and Authorities, filed concurrently herewith, all pleadings and records on file in this

14 case, and any argument at a hearing on this motion.

15        This Motion is made following the conference of counsel pursuant to L.R. 7-3

16 which took place on June 18, 2015.

17 Dated:  July 6, 2015            **DUANE MORRIS LLP**

18

19                By: s/ Keith Zakarin
                 Keith Zakarin

20                  Teresa N. Cavenagh
                 *Attorneys for Defendants*

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

BACKGROUND ................................................................................................ 2

LEGAL STANDARD ........................................................................................ 3

ARGUMENT ..................................................................................................... 5

I.   THE FCA CLAIMS SHOULD BE DISMISSED BECAUSE RELATORS PLEAD COLLECTIVELY AGAINST ALL DEFENDANTS WITHOUT DIFFERENTIATING THE CONDUCT OF EACH DEFENDANT .................................................................................. 5

II.  RELATORS' FCA CLAIMS ARE ALSO SUBJECT TO DISMISSAL BECAUSE THE AC IS DEVOID OF ANY FACTS ALLEGING SCIENTER ......................................................................................................... 8

III. THE CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER THE FCA AND FAILURE TO PLEAD FRAUD WITH SPECIFICITY ............................... 10

    A.   The "Manipulating Student Attendance Record" Scheme Lacks Specificity ............................................................................................ 11

    B.   The Failure to Comply with the 90/10 Requirement Allegations Lack All Specificity and Do Not State a Claim ................................ 12

    C.   The Allegations Regarding Entrance Exams, Diplomas and ATB Tests Lack Specificity ........................................................................ 14

    D.   The Grading/Academic Progress Allegations Fail to State a FCA Claim and Lack Specificity .............................................................. 14

    E.   Relators' False Placement Statistics' Allegations Lack All Specificity and Fail to State a Claim .............................................. 15

    F.   Relators' Allegations Regarding Cohort Default Rates Does Not State a Claim for an FCA Violation ..................................................... 17

IV.  THE AC FAILS TO PLEAD A CONSPIRACY CLAIM  WITH SPECIFICITY ............................................................................................. 18

CONCLUSION ................................................................................................. 19

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Ambrosia Coal & Constr. Co. v. Pages Morales*

5

   482 F. 3d 1309 (11th Cir. 2007) ................................................................. 5

6

*Ashcroft v. Iqbal*

7

   556 U.S. 662 (2009)..............................................................4, 9-10, 19

8

*Bell Atlantic Corp., v. Twombly*

9

   550 U.S. 544 (2007)............................................................................... 4

10

*Bly-Magee v. California*

   236 F.3d 1014 (9th Cir. 2001) ........................................................ 4, 11

11

*Decker v. GlenFed, Inc.*

12

   42 F.3d 1541 (9th Cir. 1994) ................................................................. 5

13

*Ebeid ex rel. United States v. Lungwitz*

14

   616 F.3d 993 (9th Cir. 2010) ......................................................11-12, 16

15

*Moore v. Kayport Package Express, Inc.*

16

   885 F.2d 531 (9th Cir. 1989) ................................................................. 6

17

*Shroyer v. New Cingular Wireless Services, Inc.*

18

   622 F.3d 1035 (9th Cir. 2010) ............................................................... 6

19

*Swartz v. KPMG LLP*

   476 F.3d 756 (9th Cir. 2007) ................................................................. 5

20

*United States ex rel. Casady v. American Intl. Group, Inc.*

21

   2014 U.S. Dist. LEXIS 44787 (S.D. Cal. March 29, 2014) ................... 18

22

*United States ex rel. Gatsipoulos v. Kaplan Career Inst.*

23

   2010 U.S. 135246 (S.D. Fla. December 22, 2010)................................ 14

24

*United States ex rel. Grubbs v. Kanneganti*

25

   565 F.3d 180 (5th Cir. 2009) ............................................................... 11

26

*United States ex rel. Hagood v. Sonoma County Water Agency*

27

   929 F.2d 1416 (9th Cir. 1991) ............................................................... 8

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS FIRST AMENDED COMPLAINT

*United States ex rel. Hendow v. Univ. of Phoenix*
   461 F.3d 1166 (9th Cir. 2006) ...................................................................2, 8-10

*United States ex rel. Hochman v. Nackman*
   145 F.3d 1069 (9th Cir. 1998) .................................................................... 8

*United States ex rel. Hopper v. Anton*
   91 F.3d 1261 (9th Cir. 1996) ..................................................................8-9

*United States ex rel. Jorgenson v. Alan Ritchey, Inc.*
   2007 U.S. Dist. LEXIS 31542 (W.D. WA. April 27, 2007) .................................. 18

*United States ex rel. Lee v. Corinthian Colleges*
   655 F.3d 984 (9th Cir. 2011) ........................................................ 1, 3-6, 10-12, 19

*United States, ex rel. Lee v. SmithKline Beecham, Inc.*
   245 F. 3d 1048 (9th Cir. 2001) ...................................................... 4, 11

*United States ex rel. Lincoln v. Med-Data, Inc.*
   2006 U.S. Dist. LEXIS 64288 (W.D. WA. September 8, 2006)........................... 18

*United States ex rel. Ruhe v. Masimo Corp.*
   929 F. Supp. 2d 1033 (C.D. Cal. July 9, 2012) ...................................................18-19

*United States v. Sanford-Brown, Ltd.*
   2015 U.S. App. LEXIS 9508 (7th Cir. June 8, 2015) ............................................5

*Urquilla-Diaz v. Kaplan Univ.*
   780 F. 3d 1039 (11th Cir. 2015) ................................................................13, 15-16

*Vess v. Ciba-Geigy Corp.*
   317 F.3d 1097 (9th Cir. 2003) .......................................................................4-5, 16

**Federal Statutes**

31 U.S.C. §§ 3729 ............................................................................... 1-5, 7-19

31 U.S.C. § 3729(a)(1)(A) ........................................................................... 3

31 U.S.C. § 3729(a)(1)(B) ........................................................................... 3

31 U.S.C. § 3729(a)(1)(C) ......................................................................... 3, 18

31 U.S.C. § 3729(a)(1)(G) ........................................................................... 3

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS FIRST AMENDED COMPLAINT     CASE NO. CV-13-5256-RGK(AJWX)

31 U.S.C. § 3729(b) ........................................................................................ 8

**Rules**

Fed. R. Civ. P. 8 ......................................................................................4-5, 9

Fed. R. Civ. P. 9(b) ................................................. 1-2, 4-6, 9-11, 13, 15-16

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 4

**Regulations**

34 C.F.R. § 668.14(b)(16) .............................................................8, 13, 16-17

34 C.F.R. § 668.28 ...............................................................................3, 7, 12-14

34 C.F.R. § 668.34 ......................................................................................... 15

34 C.F.R. § 668.71 ......................................................................................... 17

34 C.F.R. § 668.74 ......................................................................................... 17

**Other Authorities**

S. Rep. No. 99-345, at 7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266 ...................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants, B&H Education, Inc. ("B&H"), B&H Education Holdings, LLC ("B&H Holdings"), Dr. R. Rashed Elyas ("Dr. R. Elyas"), Dr. Nagui Elyas ("Dr. N. Elyas"), Michael Benvenuti, (M. Benvenuti"), Michael Flecker ("M. Flecker") (collectively, "Individual Defendants"), Abry Partners VI, L.P. ("Abry Partners"), Abry Investment Partnership, L.P. ("Abry Investment"), and Abry Senior Equity II, L.P. ("Abry Senior") (collectively "Abry Entities")[1], submit this Memorandum of Points and Authorities in support of their Motion to Dismiss Plaintiffs/Relators' ("Relators") First Amended Complaint ("AC"), pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and Fed. R. Civ. P. 9(b) for failure to plead fraud with specificity.

The AC attempts to assert various claims under the False Claims Act, 31 U.S.C. § § 3729 *et seq.* ("FCA") collectively against all Defendants.  As a matter of law, relators in a FCA case cannot lump nine defendants together and allege they committed fraud without identifying specifically what each defendant did to knowingly commit fraud and without facts showing how each defendant's alleged bad conduct actually resulted in false claims or statements being made that caused the government to pay out or forfeit monies. *United States ex rel. Lee v. Corinthian Colleges,* 655 F.3d 984, 997 (9th Cir. 2011).

*First,* Relators' AC is utterly devoid of any specific allegations against B&H Holdings and the Abry Entities and lacks sufficient specific allegations against B&H

---

[1]     During the conference of counsel, Relators' counsel agreed to dismiss Defendants United Beauty Enterprises, Inc. and Scope Beauty Enterprises, Inc. from the matter which is why they are not included in this Motion, but the arguments asserted herein apply equally to those entities.

1   and the Individual Defendants[2] to properly state a claim against any Defendant.

2   *Second,* the AC is devoid of any facts showing scienter or knowledge on the part of

3   any Defendant, a critical element of any FCA claim under Ninth Circuit law. *United*

4   *States ex rel. Hendow v. Univ. of Phoenix,* 461 F.3d 1166, 1175 (9th Cir. 2006).  *Third,*

5   despite the myriad of alleged bad acts pled, the AC lacks sufficient specificity under

6   Rule 9(b) to properly allege a claim for any violation of the regulations cited or more

7   importantly, a violation of the FCA.  *Fourth,* there are no facts pled showing any

8   agreement or any acts committed in furtherance of any so-called conspiracy.

9       Even accepting all of the allegations in Relators' AC as true, it fails to state any

10  claims under the FCA and does not satisfy the Supreme Court's required standards for

11  pleading a claim for relief.  As such, the AC should be dismissed.

12                              **BACKGROUND**

13      Relators filed their initial FCA *qui tam* Complaint on July 22, 2013.  After a

14  thorough investigation, including the review and assessment of thousands of the

15  schools' records and policies, the United States declined to intervene on January 13,

16  2015.  On April 17, 2015, Relators filed their AC.

17      Relators are six former employees of the Marinello School of Beauty ("MSB")

18  who worked for MSB at various times during the period 2008 through September

19  2013[3] (AC ¶¶ 13-18).  Despite working at only four of the alleged 67 campuses of

20  MSB since 2008, Relators allege that false claims were submitted by at least 20

21

22

23  _____

    [2]     Footnote 3 of the AC should be stricken.  It purports to justify why the

24  Individual Defendants were named by listing a litany of bad acts. Review of the AC,
    however, reveals no allegations against any of the Individual Defendants regarding

25  keeping ineligible students on attendance rosters, falsifying clock-hour time reports,
    obstructing DOE audits, concealment of Student Academic Reports, cleaning-up

26  school records prior to an audit, and paying cash bonuses and gifts.

    [3]     Two of the Relators, Terisa Mercer Caron and Veronica Trejo, were terminated

27  for falsifying student attendance records at the MSB Moreno Valley Campus in 2012,
    the very same conduct alleged in the AC.

28

                                        2

campuses of MSB commencing in at least 2007 (*Id.* at ¶¶ 5&129)[4].

The AC alleges a litany of non-specific acts and conduct which it characterizes as "fraudulent schemes" that purportedly involve issues relating to Department of Education ("DOE") regulations. The so-called alleged schemes include: (a) manipulating student attendance records and permitting successive leaves of absence to prevent students from being dropped from the programs so MSB could avoid returning government monies, as required by DOE regulations (*Id.* at ¶¶ 78 – 89); (b) lack of compliance with the DOE's Rule 90/10 requirements (*Id.* at ¶¶ 90 – 98); (c) failure to verify or require diplomas from prospective students and manipulating the taking and proctoring of entrance exams (*Id.* at ¶¶ 99 -107); (d) cleaning-up student academic progress reports and permitting students to retest (*Id.* at¶¶ 108-112); (e) manipulating placement statistics reported to licensing and accreditation agencies (*Id.* at ¶¶ 113 – 126); and (f) manipulating financial aid default statistics (*Id.* at ¶¶ 127-28). Without any specificity, the AC leaps to the conclusion that this conduct violated provisions in the schools' Program Participation Agreements (PPA) and DOE regulations and therefore led to the submission of false claims.

The AC purports to assert FCA claims for: (1) presenting or causing to present false claims in violation of §3729(a)(1)(A); (2) false certification in violation of §3729(a)(1)(B); (3) retention of proceeds in violation of §3729(a)(1)(G); and (4) conspiracy to commit FCA violations in violation of §3729(a)(1)(C).

## LEGAL STANDARD

Relying on Supreme Court precedent, the Ninth Circuit has adopted a two-pronged approach for evaluating the sufficiency of a complaint on a motion to dismiss. *Corinthian Colleges,* 655 F.3d at 991. First a court must determine whether the complaint contains "sufficient factual matter" that taken as a true, states "a claim

---

[4]     At a minimum, there is absolutely no factual basis, nor has any been pled, for any claims prior to 2008, nor are any facts pled regarding the basis for Relators' knowledge as to conduct at other campuses.

3

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS FIRST AMENDED COMPLAINT     CASE NO. CV-13-5256-RGK(AJWX)

for relief that is plausible on its face." *Id.*(quoting, *Ashcroft v. Iqbal,* 556 U.S. 662, 677-68 (2009)).  "Pursuant to this analysis, only pleaded facts, as opposed to legal conclusions, are entitled to the assumption of truth." *Corinthian Colleges,* 655 F.3d at 991.  The Ninth Circuit and the Supreme Court have made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A plaintiff cannot survive a Rule 12(b)(6) motion by relying on "labels and conclusions", "naked assertions" or "unadorned, the defendant-unlawfully-harmed-me accusations" in the complaint. *Iqbal,* 556 U.S. at 678.

Second, to the extent the complaint contains well pleaded factual allegations, as opposed to mere conclusions, the court must assume their veracity and then "determine whether they plausibly give rise to an entitlement to relief." *Corinthian Colleges,* 655 F.3d at 991 (quoting *Iqbal,* 556 U. S. at 678).  In *Iqbal,* the Supreme Court concluded that "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U. S. at 678.  The plausibility standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief," thereby mandating dismissal. *Bell Atlantic Corp., v Twombly,* 550 U.S. 544, 557 (2007).

Because this is a *qui tam* action brought under the FCA, Relators must meet not only the pleading requirements of Rule 8, but also the particularity requirement of Rule 9(b). *Corinthian Colleges,* 665 F.3d at 992; *United States, ex rel. Lee v. SmithKline Beecham, Inc.,* 245 F. 3d 1048, 1051 (9th Cir. 2001) (citing, *Bly-Magee v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001)).  Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake, including the "who, what, when, where and how of the misconduct charged." *Vess v. Ciba-Geigy Corp.* 317 F.3d 1097, 1106 (9th Cir. 2003).  In addition, "[T]he plaintiff must set forth what

4

1   is false or misleading about a statement and why it is false." *Id.* (quoting *Decker v.*

2   *GlenFed, Inc.* 42 F.3d 1541, 1548 (9th Cir. 1994)).

3          In addition, under Rule 9(b), group pleading under the broad moniker

4   "Defendants" is plainly insufficient. *Corinthian Colleges,* 665 F.3d at 997 (affirming

5   dismissal of claims against defendants where there was no specificity as to their

6   individual conduct).  The Ninth Circuit has made clear that Rule 9(b) does not allow a

7   complaint to merely lump multiple defendants together. *Id.* at 997-98.  Rather, it

8   requires plaintiffs to differentiate their allegations when suing more than one

9   defendant and inform each defendant separately of the allegations surrounding their

10  alleged participation in the fraud. *Id.*; *Swartz v. KPMG LLP,* 476 F.3d 756, 764-65 (9th

11  Cir. 2007).  As set forth below, Relators' FCA claims fail to meet both the plausibility

12  requirement of Rule 8 and the particularity requirement of Rule 9(b).

13                                    **ARGUMENT**

14  **I.     THE FCA CLAIMS SHOULD BE DISMISSED BECAUSE RELATORS**
          **PLEAD COLLECTIVELY AGAINST ALL DEFENDANTS WITHOUT**
15        **DIFFERENTIATING THE CONDUCT OF EACH DEFENDANT**

16          Relators' AC impermissibly asserts fraud claims collectively against all

17  Defendants.  The law in the Ninth Circuit, as well as virtually every other Circuit, is

18  clear – Rule 9(b) does not allow a complaint to lump multiple defendants together.

19  Rather, Rule 9(b) requires plaintiffs to differentiate among defendants and inform

20  each defendant separately of the allegations surrounding that defendant's alleged

21  participation in the fraud. *Corinthian Colleges,* 655 F.3d at 997-98 (quoting *Swartz,*

22  476 F.3d at 764-65).  *See also, United States v. Sanford-Brown, Ltd.,* 2015 U.S. App.

23  LEXIS 9508, *15 (7th Cir. June 8, 2015) (same); *Ambrosia Coal & Constr. Co. v.*

24  *Pages Morales,* 482 F. 3d 1309, 1317 (11th Cir. 2007)(same).  For FCA claims

25  brought under a false certification theory, a relator must allege each defendant's "role

26  in making [that] false statement to the United States government." *Corinthian*

27  *Colleges,* 655 F.3d at 998.

28          Relators' AC utterly fails to comply with this critical pleading requirement.

                                          5

Virtually every allegation in the AC is pled collectively against all Defendants.  Each Count is asserted collectively against all Defendants.  There is absolutely no attempt to plead any Defendants' role in making false statements to the United States government. *Id.*  There are no allegations whatsoever as to what any of the Defendants did in making any false statement to the United States.

There is not a single factual allegation regarding Defendants' B&H Holdings or the three Abry Entity Defendants.  The only time these four Defendants are even mentioned in the AC is at paragraphs 24 – 27, where they are merely identified and their nexus to this Judicial District is pled.  Further, these paragraphs are pled on information and belief and there is no explanation as to the basis for the belief that these Defendants do business as and are known as MSB.[5]  In fact, paragraph 19 of the AC refutes paragraphs 24 – 27, when it pleads that Defendant B&H acquired MSB in 2004, without any reference whatsoever to B&H Holdings or the Abry Entities.  There are no allegations regarding the relationship between Defendants, B&H, B&H Holdings and the Abry Entities.  Ninth Circuit law makes clear that pleading on information and belief does not satisfy Rule 9(b), unless the allegations provide a statement of facts on which the belief is founded. *Shroyer .v New Cingular Wireless Services, Inc.,* 622 F.3d 1035, 1042 (9th Cir. 2010) (citing, *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir 1989).  The AC does not allege a single fact upon which the belief is founded that B&H Holdings and the Abry Entities do business as MSB.

Although there are a few allegations regarding the Individual Defendants and Defendant B&H in the AC[6], none of these factual allegations pleads any Individual Defendants' role or B&H's role in making false statements, their participation in the certification process, or their role in submitting false claims.  Attached as Exhibit "A",

---

[5]     Because the Abry Entities are mere investors in B&H, a fact made known to Relators' counsel, there can be no basis whatsoever for the d/b/a designation.

[6]     See AC ¶¶  19, 23, 30-33, 68, 74, 82 – 83, 91, 95-96, 102, 105, 124.

1   is a chart summarizing and delineating the AC's allegations regarding the Individual

2   Defendants.  Review of that chart reveals the paucity of the allegations against the

3   Individual Defendants.  The only two allegations regarding Dr. R. Elyas are that he is

4   the CEO of B&H and signed PPAs.  This does not come close to stating a claim for an

5   FCA violation.  The only allegations regarding Dr. N. Elyas are that: (1) he is the

6   President and COO of  B&H; (2) he signed unidentified PPAs; (3) he received an

7   email noting that 30 students' attendance hours did not match MSB's internal records;

8   (4) he informed a Relator that her campus would get a cash student who received a

9   scholarship from her church; (5) he ordered that the cash student be placed on a leave

10  of absence; (6) his cousin managed the ATB program; (7) he directed MSB employees

11  to coach financial aid applicants to increase the applicants' ability to secure financial

12  aid; and (8) he instructed a career development manager to change MSB  alumni

13  salary entries.  These few non-specific allegations do not state a FCA claim.  The only

14  allegations pled against M. Benvenuti are that: (1) he is the COO of MSB; (2) he

15  signed unidentified PPAs; (3) he received the same email as Dr. N Elyas which noted

16  that 30 students' attendance hours did not match MSB's internal records; and (4) he

17  sent an email noting that 60 students should have been dropped.  Merely receiving and

18  sending two emails does not allege a FCA violation.  The only allegations against M.

19  Flecker are that: (1) he is the CFO of MSB; (2) he signed unidentified PPAs; (3) he

20  spoke at a training session regarding the "over-award" of financial aid in the form of

21  living expenses[7]; and (4) he directed MSB employees to coach financial aid applicants

22  to increase the applicants' ability to secure financial aid.  These few sparse allegations

23  do not state a FCA violation.  In the absence of other specific allegations, which are

24  not pled, none of these allegations for each Individual Defendant, either standing

25  alone or taken together, plead a fraudulent course of conduct or state a claim for an

26  FCA violation.

27  _____

    [7]     As noted in Section III B *infra*, this alleged act did not result in a violation of
    DOE's Rule 90/10 requirements or any other DOE statute or regulation.

28

| DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS FIRST AMENDED COMPLAINT |

1    Similarly, although ¶ 39 of the AC collectively pleads a litany of generic

2    alleged false statements by Defendants, review of the AC does not reveal a single

3    instance of an actual false statement made by any particular Defendant.  In addition,

4    although ¶ 75 of the AC alleges that Defendants were "violating federal regulations by

5    repeatedly lying to students about … the opportunities they would have as MSB

6    graduates", there is not a single allegation in the AC regarding any such lie by any

7    Defendant.  As such, the Complaint should be dismissed as to all Defendants.

8    **II.    RELATORS' FCA CLAIMS ARE ALSO SUBJECT TO DISMISSAL
         BECAUSE THE AC IS DEVOID OF ANY FACTS ALLEGING**

9    **SCIENTER**

10   To state a claim under the FCA, Relators must also allege facts that Defendants

11   knew they were violating the HEA, but nonetheless falsely certified compliance in

12   connection with a claim for payment.  *Hendow,* 461 F.3d at 1174.  The FCA is not a

13   strict liability statute.  It is not enough for Relators to allege that Defendants violated

14   some statutory requirement.  Rather, they have to allege facts showing that Defendants

15   did so "knowingly," with "scienter." *Id.* at 1171.  As the *Hendow* Court emphasized,

16   there must be allegations that statements or certifications were knowingly false when

17   made. *Id.* 1172.

18   The FCA defines knowing as having actual knowledge of the information, or

19   acting in either deliberate indifference to or reckless disregard for the information's

20   truth. *Id. (*quoting, 31 U.S.C. § 3729(b)).  "Congress specifically amended the FCA to

21   include this definition of scienter, to make firm its intention that the Act not punish

22   honest mistakes or incorrect claims submitted through mere negligence." *United*

23   *States ex rel. Hochman v. Nackman,* 145 F.3d 1069, 1073 (9th Cir. 1998) (quoting S.

24   Rep.  No. 99-345, at 7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5272).

25   For a certified statement to be false under the FCA, "it must be an intentional,

26   palpable lie." *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1267 (9th Cir.

27   1996) (quoting, *United States ex rel. Hagood v. Sonoma County Water Agency,* 929

28   F.2d 1416, 1421 (9th Cir. 1991)).  "Innocent mistakes, mere negligent

8

misrepresentation and differences in interpretations are not false certifications" under the FCA. *Hopper,* 91 F.3d at 1267.

Although the requirement for pleading scienter is less rigorous than that which applies to allegations regarding the circumstances constituting fraud[8], nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to set forth facts from which an inference of scienter can be drawn. *Iqbal,* 556 U.S. at 687. In *Iqbal,* the Supreme Court compared the difference between Rule 9(b) and Rule 8, but noted that the use of the term "generally" in Rule 8 is a relative term. *Id* at 686. It explained that Rule 8 does not "empower a [plaintiff] to plead the bare elements of a cause of action, affix the label general allegation and expect the complaint to survive a motion to dismiss." *Id.* at 687. Under *Iqbal,* a complaint must plead factual content to allow a court to draw a reasonable inference that a defendant is liable for the misconduct. *Id.* at 678.

Here, Relators have not alleged any facts from which an inference of scienter can be drawn to satisfy the Rule 8 pleading requirements under *Iqbal*. Rather, they have simply inserted the word "knowingly" throughout the AC, but offered no facts to show or infer that it was knowing. There are no facts pled in the AC that enables any inference that any Defendant, allegedly responsible for making the certifications or signing the PPA, had any knowledge that the alleged violations occurred[9].

The only PPA specifically identified in the AC was signed by Dr. R. Elyas in April 2008. (AC ¶ 68). Nothing is pled, however, that he had knowledge in April 2008, of the alleged violations of the PPA[10], or that he or MSB intended to violate the

---

[8]     Rule 9(b) states that "malice, intent, knowledge, and other conditions of the mind of a person may be averred generally."

[9]     In fact, due to the AC's lack of specificity, it is not even known who made the alleged false certifications.

[10]     As a result, there is no possible claim for promissory fraud as that requires that at the time the PPA was signed, there were false statements made or fraudulent conduct occurring. *Hendow,* 461 F.3d at 1173. Relators have alleged no such facts.

9

1  certifications in the PPA.  This is because most of the so-called alleged bad conduct
2  occurred between 2010 through 2013 (AC ¶¶82-84,87,91-92,95, 98,103,110,125), or
3  no dates were pled (AC ¶¶ 79-80,86,88-89,96-97,99-102,104-107,111-113,116-
4  124,127-28), in violation of Rule 9(b), so that no inference of knowledge can be made.

5      Relators' AC is in stark contrast to the complaint in *Hendow,* where the Ninth
6  Circuit found the relators had adequately pled facts giving rise to a strong inference of
7  scienter.  In *Hendow,* relators alleged that the University's head of enrollment openly
8  bragged about perpetrating a fraud regarding the incentive compensation ban.
9  *Hendow,* 461 F.3d at 1169, 1175.  They alleged that the University had an established
10 infrastructure which included two separate sets of employment files for enrollment
11 counselors, one real and one fake, to deceive the government regarding the incentive
12 compensation ban. *Id.*  They alleged that the University repeatedly changed its
13 policies and pay scales to make it less obvious that it was compensating enrollment
14 counselors based on enrollments. *Id.*

15     No such facts nor anything similar is pled in Relators' AC.  As such, Relators
16 have failed to adequately plead scienter and the AC should be dismissed.

17 **III.   THE CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED
        FOR FAILURE TO STATE A CLAIM UNDER THE FCA AND**
18 **FAILURE TO PLEAD FRAUD WITH SPECIFICITY**

19
20     Relators' alleged claims under the FCA are premised on their contention that
21 MSB was involved in a series of so-called "fraudulent schemes" which ultimately led
22 to false claims.  Although the AC details emails, alleged manipulation of records,
23 audits which revealed attendance problems, violations of MSB's internal policies and
24 other so called alleged bad conduct, careful review of the AC's allegations reveals no
25 specificity as to the actual elements of a FCA violation, nor any violation of the PPA
26 or DOE regulation.  Instead, the AC requires the Court to assume or speculate that the
27 so-called bad conduct amounted to or led to FCA violations.  *Iqbal* and Ninth Circuit
28 precedent preclude such assumption and speculation. 556 U.S. at 678; *Corinthian*

10

1   *Colleges,* 655 F.3d at 994.  Rule 9(b) requires Relators to connect the dots.

2          The essential elements of an FCA claim are: (1) a false statement or fraudulent

3   course of conduct; (2) made with the requisite scienter; (3) that was material; (4)

4   which caused the government to pay out money or forfeit monies due. *Id.* at 992.

5   With the exception of scienter, Rule 9(b) requires that these elements be pled with

6   specificity. *Bly Magee v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001).  Even

7   though, Rule 9(b) may not require a *qui tam* plaintiff to allege, in detail, all facts

8   supporting each and every instance of a defendant's false claims, the complaint must,

9   at a minimum, give a defendant notice of the particular misconduct which is alleged to

10  constitute the fraud charged, so that it can defend against the charge and not just deny

11  that it has done any wrong.  *SmithKline Beecham,* 245 F.3d at 1051-52.

12         Although in the Ninth Circuit, a relator is not required to identify representative

13  examples of false claims to support every allegation, the relator must allege particular

14  details of a scheme to submit false claims, paired with reliable indicia that lead to a

15  strong inference that claims were actually submitted. *Ebeid ex rel. United States v.*

16  *Lungwitz,* 616 F.3d 993, 998-99 (9th Cir. 2010) (quoting, *United States ex rel. Grubbs*

17  *v. Kanneganti,* 565 F.3d 180, 190 (5th Cir. 2009)).  As set forth below, Relator's AC

18  fails to do so, despite the myriad of questionable conduct alleged.

19         A.     **The "Manipulating Student Attendance Record" Scheme Lacks**

20                **Specificity**

21         The AC's allegations regarding manipulating student attendance records does

22  not state a claim for an FCA violation due to the lack of specificity.  The allegations in

23  ¶¶ 79-81 and 84 – 89 of the AC lack all specificity.  In violation of Ninth Circuit

24  requirements, they do not provide the who, when or how this occurred. *SmithKline*

25  *Beecham,* 245 F.3d at 1051-52.  There are no allegations regarding who did the

26  manipulation, what manipulations were done, when all the manipulations were done,

27  what the Defendants authorized or which Defendants had knowledge of the

28  manipulations.  The AC also does not allege that anyone who signed the PPA or who

11

1    submitted the claims had knowledge or were aware of this alleged conduct.

2         The allegations in ¶ ¶ 82-84 reflecting internal audits do not allege that false

3    claims were submitted or that monies were wrongfully retained.  The allegations state

4    that these were internal audits done to catch and correct any possible problems. *Id.* at

5    ¶¶ 82-83.  There is nothing in the AC's factual allegations that MSB was retaining

6    funds to which it was not entitled or failing to return funds when necessary.  In fact,

7    the quotes in the AC from the emails make clear that students in violation of the

8    fourteen-day rule had to be dropped.  A complaint asserting FCA violations must do

9    more than force a court to speculate that wrongful acts may have occurred. *Corinthian*

10   *Colleges,* 655 F.3d at 991.

11        There is no allegation that there is any DOE prohibition regarding multiple

12   leaves of absence. (AC ¶ 86).  Hence in the absence of such a prohibition, there can be

13   no possible FCA violation.  The lack of reconciliation of internal school records (AC

14   ¶¶ 82, 88), does not provide a reasonable inference that a false claim was submitted.

15   It is just a plausible that the so-called discrepancies were reconciled.  There is also no

16   allegation that the students whose records did not reconcile were in fact in violation of

17   the fourteen day rule.  There are simply no allegations which provide "reliable indicia

18   that lead to a strong inference that false claims or certifications were actually

19   submitted." *Ebeid,* 616 F.3d at 998-99.  Without this specificity, these claims should

20   be dismissed.

21        **B.    The Failure to Comply with the 90/10 Requirement Allegations Lack
              All Specificity and Do Not State a Claim**

22

23        Although it is true that if a school fails to comply with the 90/10 requirement

24   during a two year period, it may not be eligible to participate in the federal loan

25   programs and hence continued loan requests could be deemed false claims, the

26   allegations in ¶¶ 91 – 98 of the AC do not in any way plead MSB's actual failure to

27   comply with the 90/10 requirement.  In addition, they lack all specificity.

28        The 90/10 rule provides that a proprietary institution must derive at least 10%

                                          12

1   of its revenue for each fiscal year from sources other than Title IV, Higher Education

2   Act ("HEA") program funds or be subject to sanctions. 34 C.F. R. § 668.14(b)(16).

3   There are complex, detailed regulations regarding the calculation of revenue from

4   non-Title IV sources. 34 C.F.R. § 668.28, as well as the imposition of possible

5   sanctions. *Id.*

6        In *Urquilla-Diaz v. Kaplan Univ.,* 780 F. 3d 1039, 1056 (11th Cir. 2015), the

7   Eleventh Circuit upheld the dismissal of a FCA claim that alleged violations of  the

8   90/10 requirement in connection with a scholarship program.  The Eleventh Circuit

9   noted that the relator had not alleged with particularity that Kaplan received more than

10   90% of its revenue from Title IV funds or that it received less than 10% of its revenue

11   from non-Title IV funds. *Id.*  The Eleventh Circuit concluded that general allegations

12   that Kaplan used creative accounting techniques to indicate Kaplan was receiving cash

13   payments from the scholarship when it was not were unsupported by any specific

14   factual allegations. *Id.*

15        Relators' AC fares no better.  Alleged incorrect statements made at a meeting

16   do not in any way plead a violation of the 90/10 requirement. (AC ¶ 91).  Nothing

17   specific is pled that those remarks actually led to a 90/10 violation.  In fact, in light of

18   DOE's clarification of the rule a mere three months later, as set forth in ¶  92 of the

19   AC, MSB could not have violated the 90/10 rule.

20        Ignoring Rule 9(b), there are also no specifics pled regarding Defendants'

21   failure to disburse loan amounts. (AC ¶ 92).  Similarly, as in *Urquilla-Diaz,* non-

22   specific allegations regarding "sham cash students" and scholarship funds in no way

23   plead a violation of the 90/10 requirement. (AC ¶¶ 94-96) *Id.*  Cash students, sham or

24   otherwise, do not give rise to a 90/10 violation.  The AC pleads that the cash for the

25   scholarship was received, thereby negating any possibility of a 90/10 violation. (AC

26   ¶ 95).  Moreover, there is not a single allegation regarding how one alleged sham

27   student would have placed MSB in jeopardy of a Rule 90/10 violation.  The

28   allegations in ¶¶ 97-98 lack all specificity and do not state a claim.  Nothing is

13

1   specifically pled as to how advanced workshops caused MSB to violate the 90/10 rule.

2   Accordingly, the allegations regarding the so-called violation of the Rule 90/10

3   requirement should be dismissed.

### C.   The Allegations Regarding Entrance Exams, Diplomas and ATB Tests Lack Specificity

The allegations in ¶¶ 99 – 107 of the AC lack all specificity and fail to state a claim for an FCA violation.  No specifics are pled regarding alleged fabrication of proof of education or whether this in fact resulted in false claims. (AC ¶ 99).  There is no allegation that those students did not have a diploma or its equivalent.  All that is pled is that it was not verified. (*Id*)  Similarly, there is no particularity regarding the ATB allegations and whether this conduct led to false claims. (¶¶ 100-102).  Moreover, a District Court in Florida dismissed similar  allegations regarding coaching students taking ATB tests, because there was no allegation that coaching violated the statute. *United States ex rel. Gatsipoulos v. Kaplan Career Inst.,* 2010 U.S. 135246, *17 (S.D. Fla. December 22, 2010).  Here too, there are no allegations that coaching is not permitted or that proctors had to be qualified.

There is nothing fraudulent or illegal pled regarding MSB's relationship with Parkridge. (AC ¶ 103).  This includes having MSB personnel being qualified as proctors. (*Id.*).  There is no allegation that once approved as proctors, MSB personnel were involved in any illegal or fraudulent conduct.  Similarly, ¶¶ 104 – 106 in the AC lack particularity as to when this occurred, for what applicants and how management encouraged it or what Defendants did or said.  In sum, these allegations regarding entrance exams, diplomas and ATB exams should be dismissed for failure to plead fraud with particularity.

### D.   The Grading/Academic Progress Allegations Fail to State a FCA Claim and Lack Specificity

Relators' allegations regarding alteration of Student Academic Progress

14

reports[11] do not in any way plead an actual claim for an FCA violation and fail to plead fraud with specificity.  Although there are detailed DOE regulations regarding satisfactory academic progress at 34 C.F.R. 668.34, Relators conveniently ignore those regulations because the facts as pled in the AC do not give rise to a violation of these regulations.  Vague allegations that instructors were advised to clean up student academic reports and manually average out certain grades does not equate to fraud or false representations. (AC ¶ 110).  There is also no allegation that retesting is not permitted, nor any citation to any regulation prohibiting retesting.  Hence, there is no way this amounts to fraud or a false statement. (AC ¶ 111).  Similarly, a single email seeking guidance regarding entering failing grades into the system and criticism of retaking exams does not state a FCA claim. (AC ¶ 112).  Moreover, there is no allegation that any Defendant was privy to or had knowledge of the email.

In *Urquilla Diaz,* the relator alleged that a grade inflation scheme caused a FCA violation. 780 F.3d at 1055.  In dismissing the claim, the Eleventh Circuit concluded that mere allegations regarding a grade inflation scheme did not state a FCA claim. *Id.*  The Court noted that it was necessary to plead with particularity that certain students were not making satisfactory progress and that Kaplan's certifications regarding those students were false.  Like the relator in *Urquilla-Diaz,* Relators have not pled with any particularity that MSB's certifications regarding certain students were false.  In fact, Relators have not pled a single false certification in the entire AC.  Once again, Relators' AC pleads a plethora of so-called bad conduct, but never connects the dots to state a plausible claim.  Accordingly, these claims should be dismissed.

### E.   Relators' False Placement Statistics' Allegations Lack All Specificity and Fail to State a Claim

The AC's allegations regarding MSB's false certification of its placement statistics utterly fail to meet the Rule 9(b) pleading fraud with particularity

---

[11]   Although Relators' AC refers to them as Student Academic Progress reports, in fact the correct terms is Satisfactory Academic Progress reports.

1   requirements. (AC ¶¶ 113-116, 126). Rule 9(b) requires a party to state with

2   particularity the circumstances constituting the fraud, including the who, what, when,

3   where and how of the misconduct charged. *Ebeid,* 616 F.3d at 998 (quoting, *Vess v.*

4   *Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). In addition, a plaintiff

5   must set forth what is false or misleading about a statement and why it is false. *Id.*

6          Relators' AC does not come close to satisfying the Ninth Circuit's Rule 9(b)

7   requirements. Not a single fact is pled as to who made the false certifications, in what

8   documents they were made or how they were false or misleading. Further, allegations

9   regarding audits confirming inaccurate placement data does not equate to false or

10   misleading placement data being certified and submitted to accrediting and licensing

11   agencies or the DOE. There is no allegation, because there cannot be, that the

12   independent audit data was hidden or not reported.

13          In addition to failing to satisfy Rule 9(b), Relators' allegations regarding false

14   placement statistics being certified and provided to accrediting and licensing bodies

15   does not state a claim for a FCA violation. *Urquilla-Diaz,* 780 F.3d at 1056. Although

16   lacking all specificity and intentionally oblique, Relators' AC alleges that MSB

17   provided false placement data in order to remain accredited and licensed and therefore

18   eligible for Title IV funding. (AC ¶ 126). The Eleventh Circuit addressed this very

19   issue in *Urquilla-Diaz* and flatly rejected that such an allegation states a claim for a

20   FCA violation. *Id.* The Eleventh Circuit concluded that "while lying to an

21   accreditation agency is a reprehensible business practice," it does not violate the FCA

22   unless the false statements were essential to the school receiving or maintaining its

23   accreditation. *Id.* The Court explained that to state such a claim the relator would

24   have to plead specifically a plausible connection between the false statements and the

25   agency's decision to accredit. *Id.* Relators' AC does not come close to pleading any

26   such plausible connection. Further, because there is no state requirement regarding

27   minimum placement requirements, legally there can be no connection whatsoever.

28          Further, Relators' contention that the alleged false placement statistics also

16

violate HEA regulation, 34 C.F.R. § 668.74 (AC ¶ 126) and therefore, automatically results in a FCA violation, is misplaced.  Section 668.74 is included in Subpart F of Title 34 which addresses misrepresentations of various types, including those involving employability of an institutions' graduates, § 668.74.  Section 668.71 is the scope section of Subpart F.  It makes clear that there is no automatic ineligibility of an institution if it violates § 668.74 or other misrepresentation provisions within Subpart F.  Section 668.71 provides:

> If the Secretary determines that an eligible institution has engaged in substantial misrepresentations, the Secretary may –
>
> (1) Revoke the eligible institution's program participation agreement;
>
> (2) Impose limitations on the Institution's participation in Title IV HEA programs;
>
> (3) Deny participation application made on behalf of the institution; or
>
> (4) Initiate a proceeding against the eligible institution under Subpart G of this part.

34 C.F.R. § 668.71 (emphasis added).

As such, because a violation of § 668.74 does not create automatic ineligibility for an institution, there is no FCA violation pled.

**F.  Relators' Allegations Regarding Cohort Default Rates Does Not State a Claim for an FCA Violation**

Relator's allegations in ¶¶ 127-28 regarding cohort default rates ("CDR") does not state a claim for an FCA violation.  First, MSB does not and cannot manipulate its CDR, as the CDR is calculated by DOE, not the institution.  Second, the AC never pleads, because it could not, that the alleged practice to attract dropped students to return to the program had any impact whatsoever on MSB's CDR, let alone preventing it from exceeding 40% as mandated in the DOE regulation.  The AC's mere description of some alleged practice by MSB to attract dropped students to return to the program does not come close to pleading a FCA violation regarding

17

CDR. It does not allege specific allegations regarding (1) MSB's CDRs and how they fluctuated based on this so-called practice, (2) students who were in default and then returned to the program, (3) how this impacted MSB's CDR. Accordingly, there is no FCA claim asserted regarding MSB's CDR.

## IV. THE AC FAILS TO PLEAD A CONSPIRACY CLAIM WITH SPECIFICITY

Without any specificity whatsoever, Count IV purports to assert a claim for conspiracy to violate the FCA, 31 U.S.C. § 3729(a)(1)(C). (AC ¶¶ 142 – 44). Count IV, as well as the entire AC, however, never allege any agreement among the Defendants or any other factual allegations that in anyway plead a conspiracy. Instead, the AC simply uses the conclusory term, "conspired" with absolutely no facts showing how, when or who conspired.

Although apparently not addressed directly by the Ninth Circuit in the context of a FCA claim, district courts in the Ninth Circuit have concluded that such conclusory pleading of a conspiracy does not suffice. *United States ex rel. Casady v. American Intl. Group, Inc.,* 2014 U.S. Dist. LEXIS 44787, **31-32 (S.D. Cal. March 29, 2014) (dismissing FCA conspiracy count where the complaint failed to provide sufficient and concrete details of any unlawful conspiracy); *United States ex rel. Ruhe v. Masimo Corp.,* 929 F. Supp. 2d 1033, 1037-38 (C.D. Cal. July 9, 2012) (dismissing FCA conspiracy claim because complaint did not adequately allege the existence of a conspiracy and never asserted that the corporate entity conspired with any separate and independent individual or entity); *United States ex rel. Jorgenson v. Alan Ritchey, Inc.,* 2007 U.S. Dist. LEXIS 31542, *10 (W.D. WA. April 27, 2007) (dismissing FCA conspiracy count because relator failed to plead facts and circumstances relating to the conspiracy); *United States ex rel. Lincoln v. Med-Data, Inc.,* 2006 U.S. Dist. LEXIS 64288, **9-10 (W.D. WA. September 8, 2006) (dismissing FCA conspiracy claim because there was no allegation of an agreement nor names of a second defendant with whom an agreement to defraud the government may have been struck).

18

1    Here too, Relators' AC has pled no facts whatsoever regarding any conspiracy.

2  It never alleges any agreement, who participated in the conspiracy, any meeting of the

3  minds, nor any specific acts in furtherance of a conspiracy to submit false claims or

4  make false certifications.  In addition, its failure to plead with any specificity who

5  participated in the conspiracy makes it impossible to assess whether the intra-

6  corporate conspiracy doctrine applies to also bar the claim. *Ruhe,* 929 F. Supp. 2d at

7  1038.  As such, Count IV of the Complaint should be dismissed.

8                                **CONCLUSION**

9    Despite Relators' litany of so-called fraudulent schemes, careful review of what

10  has been pled reveals only supposition and speculation that false claims have been

11  made.   Ninth Circuit and Supreme Court precedent, however, prevent claims moving

12  forward based solely on supposition and speculation. *Iqbal,* 556 U.S. at 678;

13  *Corinthian Colleges,* 655 F. 3d at 994.

14    Relators' attempt to plead collectively against all Defendants is simply not

15  permitted. *Id.* at 997.  Relators have failed to plead facts that give rise to any inference

16  of scienter by any Defendant.  Relators have failed to plead their claims with

17  specificity, and as such, have failed to state a claim for any violation of the FCA.

18  Unequivocally, no claim for conspiracy has been pled.  Accordingly, all claims

19  against all Defendants should be dismissed with prejudice.

20

21  Dated:  July 6, 2015                    **DUANE MORRIS LLP**

22

23                                By: s/ Keith Zakarin
                                     Keith Zakarin
24                                   Teresa N. Cavenagh
                                     *Attorneys for Defendants*
25

26

27

28

# EXHIBIT A

1   Keith Zakarin (SBN 126528)
    **DUANE MORRIS LLP**
2   750 B Street, Suite 2900
    San Diego, CA 92101-4681
3   Telephone:  619-744-2200
    Facsimile:  619-744-2201
4   E-mail:  kzakarin@duanemorris.com

5   Teresa N. Cavenagh (Pro Hac Vice to be filed)
    **DUANE MORRIS LLP**
6   30 South 17th Street
    Philadelphia, PA  19103-4196
7   Telephone:  215-979-1808
    Facsimile:  215-689-1939
8   E-mail:  tncavenagh@duanemorris.com

9   *Attorneys for Defendants*

10

11                   **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13                        **WESTERN DIVISION**

14

15  **UNITED STATES OF AMERICA**, *ex rel.*     Case No.  CV-13-5256-RGK(AJWx)
    **TERISA MERCER CARON**,
16  **VERONICA TREJO**, **PAIGE STEVENS**,      **EXHIBIT "A" TO**
    **HEATHER LUEDTKE**, **TAMECA**             **DEFENDANTS' NOTICE OF**
17  **SHELTON**, and **CINDY JUAREZ**,          **MOTION AND MOTION TO**
    individuals,                                **DISMISS RELATORS' FIRST**
18                                              **AMENDED COMPLAINT**
                      Plaintiffs,               **PURSUANT TO FEDERAL**
19                                              **RULES OF CIVIL PROCEDURE**
              v.                                **9(b) AND 12(b)(6)**
20
    **B&H EDUCATION, INC.**, a Delaware
21  Corporation, d/b/a MARINELLO SCHOOL
    OF BEAUTY; **B&H EDUCATION**                Judge:      Hon. R. Gary Klausner
22  **HOLDINGS, L.L.C.**, a Delaware Limited    Date:       August 24, 2015
    Liability Company; **DR. R. RASHED**        Time:       9:00 a.m.
23  **ELYAS**, an individual; **DR. NAGUI**     Place:      Courtroom 850
    **ELYAS**, an individual; **MICHAEL**
24  **BENVENUTI, COO**, an individual;
    **MICHAEL FLECKER, CFO**, an
25  individual; **ABRY PARTNERS VI, L.P.**, an
    unknown entity; **ABRY INVESTMENT**
26  **PARTNERSHIP, L.P.**, an unknown entity;
    **ABRY SENIOR EQUITY II, L.P.**, an
27  unknown entity; **UNITED BEAUTY**
    **ENTERPRISES, INC.**, a California
28  Corporation; and **SCOPE BEAUTY**

1    **ENTERPRISES, INC.**, a California
Corporation,

2

3                Defendants.

4                    **EXHIBIT "A"**

| AMENDED COMPLAINT PARAGRAPH | INDIVIDUAL DEFENDANT | AMENDED COMPLAINT ALLEGATION |
|---|---|---|
| 30 | Dr. R. Elyas | Chief Executive Officer of B&H |
| 31 | Dr. N. Elyas | President and Chief Operating Officer of B&H |
| 32 | M. Benvenuti | Chief Operating Officer of MSB |
| 33 | M. Flecker | Chief Financial Officer of MSB |
| 68 | Dr. R. Elyas | Signed PPA for MSB MorenoValley in April 2008 |
| 74 | Dr. R. Elyas Dr. N Elyas M. Benvenuti M. Flecker | Signed unidentified MSB PPAs |
| 82 | Dr. N. Elyas M. Benvenuti | Received 10/19/2012 email regarding internal audit that noted 30 students' attendance hours did not match MSB's internal record system |
| 83 | M. Benvenuti | Sent 10/15/2012 email regarding approximately 60 students that appear to be past 14 days and should have been dropped |
| 91 | M. Flecker | Spoke at training session regarding "over-awarding" financial aid in the form of living expenses and directed attendees to follow the instructions |
| 95 | Dr. N. Elyas | Informed a Relator that Moreno Valley campus would be getting new cash student who had received a scholarship from Dr. N. Elyas' church. |
| 96 | Dr. N Elyas | Relator was informed by her superior that Dr. N. Elyas had ordered that the cash scholarship student should be placed on a "falsified" Leave of Absence |
| 102 | Dr. N. Elyas | His cousin managed ATB program |
| 105 | Dr. N. Elyas M. Flecker | Directed MSB employees to coach financial aid applicants to increase the applicants' ability to secure financial aid and to retain applicants' FAFSA PIN numbers |
| 124 | Dr. N. Elyas | Instructed a career development manager to change alumni salary entries |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DM1\5804417.1     EXHIBIT "A" TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS FIRST AMENDED COMPLAINT     CASE NO. CV-13-5256-RGK(AJWX)